<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., <br><br> *Plaintiff*, <br><br><br> v. <br><br> Z & R CORPORATION D/B/A EL CHICANO BAR; LUIS A. ZUNIGA; JOHN DOES 1-10 AND ABC CORPS. 1-10, <br><br> *Defendants.* | Civil No.: 19-cv-12189 (KSH) (CLW) <br><br><br><br> <u>**OPINION**</u> |

**Katharine S. Hayden, U.S.D.J.**

### I.      Introduction

This matter comes before the Court on the motion (D.E. 9) of plaintiff J&J Sports Productions, Inc. for default judgment against defendants Z & R Corporation d/b/a El Chicano Bar and Luis A. Zuniga ("defendants"). Plaintiff alleges that defendants, without authorization, broadcast a 2016 boxing match as to which plaintiff had exclusive distribution rights.

### II.      Background

The complaint alleges as follows. Plaintiff is a California corporation with a principal place of business in California. (D.E. 1, Compl. ¶ 5.) It is a closed-circuit distributor of sporting and entertainment programming. (*Id.* ¶ 23; D.E. 9-1, Gagliardi Aff. ¶ 3.) Plaintiff had the exclusive right to exhibit, at commercial closed circuit outlets, the May 7, 2016 English-language telecast of a boxing match entitled Saul Alvarez v. Amir Khan WBC World Middleweight Championship Fight Program (the "Program"), and it sublicensed to various commercial entities the limited right to publicly exhibit the Program in their establishments. (Compl. ¶¶ 19-20; Gagliardi Aff. ¶ 3 & Ex. A.)

1

Z & R is a New Jersey corporation with a bar in Clifton, New Jersey, and Zuniga is

alleged to have been the chief executive officer, owner, agent, license holder, and supervisor of

the activities at Z & R's establishment at all times relevant to the action.  (Compl. ¶¶ 6-18.)  On

May 7, 2016, Z & R purportedly intercepted and broadcast the Program at Zuniga's direction or

with his knowledge, despite having no authorization from plaintiff to do so.  (*Id.* ¶ 16, 28-30.)

Plaintiff claims that this broadcast resulted in income and increased profits for El Centro.  (*Id.*

¶¶ 15, 17.)  The license fee for an establishment of Z & R's capacity to lawfully broadcast the

Program would have been $2,200.  (Gagliardi Aff. ¶ 8.)

On May 6, 2019, plaintiff filed its complaint against defendants.  The complaint asserted

claims for violations of 47 U.S.C. § 605 (count I) and, in the alternative, 47 U.S.C. § 553 (count

II), as well as common law claims of unlawful interference with prospective economic advantage

(count III) and unlawful interference with contractual relations (count IV).  Defendants were

duly served (D.E. 5, 6), but have not answered or otherwise responded to the complaint.  Default

was entered against both defendants on September 3, 2019.  Plaintiff has now moved for default

judgment (D.E. 9), and relies on an affidavit of Joseph M. Gagliardi, plaintiff's president (D.E.

9-1, Gagliardi Aff.), a certification of counsel (D.E. 9-2, Peters Certif.), and a brief (D.E. 9-3,

Moving Br.).  Plaintiff seeks judgment only on count I, for violation of 47 U.S.C. § 605, in the

amount of $26,600, and also requests 30 days to submit its "request for full costs, including

reasonable attorneys' fees."  (Peters Certif. ¶¶ 7-9.)

### III.    Legal Standard

The Court may enter default judgment under Fed. R. Civ. P. 55(b)(2) against a properly

served defendant who does not file a timely responsive pleading.  *Chanel, Inc. v. Gordashevsky*,

558 F. Supp. 2d 532, 535 (D.N.J. 2008) (Kugler, J.).  Although cases are to be decided on their

merits where practicable, whether to grant a motion for default judgment is "largely a matter of judicial discretion." *Id.* In ruling on the motion, the Court accepts the well-pleaded factual allegations in the complaint as true but "need not accept the moving party's legal conclusions or allegations relating to the amount of damages," and must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Id.* at 535-36 (citations omitted).

In addition to determining that the facts state a legitimate cause of action and that the movant has established its damages, the Court must "make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (Ackerman, J.) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). The Court must also be satisfied that it has subject matter and personal jurisdiction, and that the defendant was properly served. *See Joe Hand Promotions, Inc. v. Batra*, 2017 WL 838798, at *2 (D.N.J. Mar. 2, 2017) (Vazquez, J.).

**IV.    Analysis**

The threshold requirements for entry of default judgment are met here. The Court has subject matter jurisdiction over plaintiff's 47 U.S.C. § 605 claim. 28 U.S.C. § 1331; 47 U.S.C. § 605(e)(3). Plaintiff's service of process on resident defendants within the state suffices for personal jurisdiction. Fed. R. Civ. P. 4(k)(1)(A); N.J. Ct. R. 4:4-4(a)(1), (6). Z & R was duly served via its registered agent and Zuniga was personally served. (D.E. 5, 6.) *See* Fed. R. Civ. P. 4(e), (h). Defendants have not answered or otherwise responded to the complaint, and default has been entered by the Clerk against them.

Plaintiff has also stated a claim under 47 U.S.C. § 605, and the record suggests no

meritorious defense.[1]   Section 605(a) prohibits the unauthorized interception and publication of

communications.  Three elements must be established to state a claim: "(1) interception of a

satellite transmission or broadcast, (2) lack of authorization, and (3) publication."  *J&J Sports*

*Prods. v. Ramsey*, 757 F. App'x 93, 95 (3d Cir. 2018).  Here, plaintiff's submissions satisfy the

requirements.  Plaintiff held exclusive rights to distribute the Program in venues such as Z & R

and did not sublicense those rights to Z & R.  (Gagliardi Aff. ¶¶ 3-4, 7 & Ex. A; Compl. ¶¶ 19-

20, 29.)  Z & R thus lacked authorization to broadcast the Program.  Nonetheless, it did so.

(Compl. ¶¶ 11, 28-29; Gagliardi Aff. ¶ 7 & Ex. B.)[2]  When plaintiff's investigator visited, the

Program was being shown on the bar's three televisions, and 20 patrons were present.  (Gagliardi

Aff. Ex. B.)

The predicates for imposing individual liability on Zuniga are also met.  Plaintiff must

show that Zuniga had "the right and ability to supervise the violative activity, although he need

not actually be supervising, because he need not know of the violative activity," as well as "a

direct financial interest in the violation, *i.e.*, financial benefits, even if not proportional or

precisely calculable, that directly flow from the violative activity."  *Ramsey*, 757 F. App'x at 95

(quoting *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 296 (E.D. Pa. 2014)).  The

complaint alleges Zuniga's status as an officer and license holder of Z & R, and as having the

ability to control the activities in the establishment and a direct financial interest in those

activities.  (Compl. ¶¶ 8, 10-18.)  *Accord Batra*, 2017 WL 838798, at *1 n.1.

---

[1] Plaintiff is not seeking judgment or relief on its remaining claims, and the Court therefore need
not evaluate their legal sufficiency.

[2] The investigator's affidavit states that he observed a boxing match between David Lemieux and
Glen Tapia being shown; the Gagliardi affidavit indicates that this match was part of the
Program.  (Gagliardi Aff. ¶ 7 & Ex. B.)

The remaining factors also weigh in favor of default judgment.  Defendants' failure to

appear or to file any response to the complaint has prevented plaintiff from prosecuting this

action and obtaining relief, to its prejudice.  *See Joe Hand Promotions, Inc. v. Old Bailey Corp.*,

2018 WL 1327108, at *2 (D.N.J. March 15, 2018) (McNulty, J.); *Batra*, 2017 WL 838798, at *3

("[W]ithout a default judgment, Plaintiff has no other means to seek relief for the harm allegedly

caused by Defendants.").  And "[a]bsent any evidence to the contrary, 'the [d]efendant's failure

to answer evinces the [d]efendant's culpability'" in the default.  *Joe Hand Promotions, Inc. v.*

*Old Bailey Corp.*, 2018 WL 1327108, at *2 (quoting *Teamsters Pension Fund of Philadelphia &*

*Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011)).  No such evidence

of a reason other than defendants' "willful negligence" is present here.  *See id.*

With respect to damages, the statute permits a plaintiff to elect between actual and

statutory damages.  47 U.S.C. § 605(e)(3)(C)(i)(I)-(II).  If the plaintiff elects to seek statutory

damages, it may recover no less than $1,000 and no more than $10,000, "as the court considers

just."  *Id.* § 605(e)(3)(C)(i)(II).  Plaintiff has elected to seek statutory damages, and seeks "at

least" $6,600 under 47 U.S.C. § 605(e)(3)(C)(i)(II).  (*See* Peters Aff. ¶ 8; Moving Br. 10.)

If the Court finds that the statutory violation was committed "willfully and for purposes

of direct or indirect commercial advantage or private financial gain," it may, in its discretion,

increase the damages award, "whether actual or statutory, by an amount of not more than

$100,000 for each violation." *Id.* § 605(e)(3)(C)(ii).  Plaintiff seeks $20,000 under this section.

In the absence of an established formula for determining the appropriate amount of

damages to be awarded for § 605 violations (Moving Br. 15), the Court looks to actual damages

as a persuasive metric, as other courts in this district have done, *see, e.g.*, *Batra*, 2017 WL

838798, at *3; *Joe Hand Promotions, Inc. v. Waldron*, 2013 WL 1007398 (D.N.J. Mar. 13, 2013)

5

(Kugler, J.), and as this Court has done in the past, *see J&J Sports Prods. v. Old Bailey Corp.*,

2019 WL 4267856, at *3 (D.N.J. Sept. 9, 2019).  Here, the Court again applies the rationale

underlying those decisions, will look to the license fee plaintiff would have charged an

establishment of Z & R's capacity, and will award $2,200 in statutory damages.  (*See* Gagliardi

Aff. ¶ 8 & Exs. B & C.)  Although plaintiff seeks to have defendants' profits added to this

amount (Moving Br. 14), the record lacks evidence of the amount of those profits, if any.

With respect to enhanced damages, plaintiff certifies that its programming cannot be

mistakenly intercepted and affirmative steps would have to be taken to do so.  (Gagliardi Aff.

¶¶ 9-10, 14.)  Moreover, the Program was broadcast at Z & R, a commercial establishment,

permitting an inference that defendants' actions were taken for commercial advantage or

pecuniary gain.  *Waldron*, 2013 WL 1007398, at *3.  As such, additional, or enhanced, damages

under 47 U.S.C. § 605(e)(3)(C)(ii) will be awarded.  Five factors inform the appropriate amount

of an enhanced damages award:

> (1) whether the defendant has intercepted unauthorized broadcasts repeatedly and
> over an extended period of time; (2) whether it reaped substantial profits from the
> unauthorized exhibition in question; (3) whether the plaintiff suffered significant
> actual damages; (4) whether the defendant advertised its intent to broadcast the
> event; and (5) whether the defendant levied a cover charge or significant
> premiums on its food and drink because of the broadcast.

*Batra*, 2017 WL 838798, at *4. Here, plaintiff has pointed to another judgment it secured against

these defendants in New Jersey state court in 2018; although neither a copy of that judgment nor

the record that led to its entry has been supplied, plaintiff's counsel has certified that the

judgment awarded it statutory and enhanced damages, suggesting circumstances similar to the

present action.  (Peters Certif. ¶ 15.)  Plaintiff's brief also describes this judgment as evidencing

"a pattern of disregard for [p]laintiff's property rights."  (Moving Br. 19.)  Moreover, plaintiff's

investigator certified that the Program was being shown on the three televisions in the bar. (Gagliardi Aff. Ex. B.)[3]

On the other hand, plaintiff has not supplied any evidence or information about the profits, if any, defendants may have reaped from showing the Program or about any advertising defendants may have done—an evidentiary gap plaintiff attributes to its inability to get discovery from these defaulting defendants.  (Moving Br. 19.)  Plaintiff's investigator also confirmed that there was no cover charge to enter, and plaintiff did not seek to determine whether food or drink was priced at a premium for the Program.  (Gagliardi Aff. ¶ 17 & Ex. B.)  Although plaintiff alleges that signal piracy in general costs it "millions" (*id.* ¶¶ 12-13), its actual damages in this instance – separate from alleged "detrimental effects" on others – appear to be the loss of the license fee.  Under the circumstances, the Court will award $4,400 under 47 U.S.C. § 605(e)(3)(C)(ii), which, together with the statutory damages awarded, equals $6,600, an amount three times what defendants would have had to pay to lawfully broadcast the Program. Accord *Old Bailey Corp.*, 2019 WL 4267856, at *4.

Under 47 U.S.C. § 605(e)(3)(B)(iii), the Court must "direct the recovery of full costs," including attorneys' fees, to a prevailing plaintiff.  In accordance with L. Civ. R. 54.1 and 54.2, plaintiff shall file its motion for costs and attorneys' fees within 30 days after the date of entry of the order and judgment accompanying this opinion.

---

[3] The Court presumes that the reference in plaintiff's moving brief to the Program being shown on one of the three televisions was in error.  (*See* Moving Br. 2.)

## V.      Conclusion

For the foregoing reasons, the Court will grant plaintiff's motion for default judgment and award damages in an amount totaling $6,600. An appropriate order and judgment will follow.

/s/ Katharine S. Hayden

Date: August 6, 2020                                 Katharine S. Hayden, U.S.D.J